IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SAFECO Insurance Company of America,
    Plaintiff,

v.                                                   Civil Case No. 3:15-cv-19-JAG

JAAAT Technical Services, LLC,
    Defendant

JAAAT Technical Services, LLC,
    Third-Party Plaintiff,

v.

Tetra Tech Tesoro, Inc.
    Third-Party Defendant.

## OPINION

This matter comes before the Court on the motion of the third-party plaintiff, JAAAT Technical Services, LLC, for a preliminary injunction against Tetra Tech Tesoro, Inc. ("TTT"), the third-party defendant. During the briefing of this matter, the Court learned for the first time of related ongoing litigation among the parties in this case in numerous forums. Earlier, Safeco and JAAAT submitted to the Court an agreed preliminary injunction, but they did not tell the Court that another court had already issued an injunction covering some of the matters in the consent injunction. Based upon the Court's concerns regarding comity, *Rooker-Feldman* issues, and the parties' overall lack of candor to the Court, the Court vacated the previous injunction and DENIED JAAAT's motion for a preliminary injunction against TTT. This opinion explains the reasons for the Court's actions.

## I. Background

This case involves a construction project, surety bonds, and undisclosed litigation in many other courts.

Safeco issued performance and payment bonds on behalf of JAAAT for federal construction projects. The agreement between Safeco and JAAAT imposed numerous obligations on JAAAT; this suit seeks to enforce some of those duties. Safeco issued over $55 million in surety bonds covering five federal construction projects. These five government contracts required JAAAT to perform construction work at Fort Benning, Georgia; Fort Gordon, Georgia; and Fort Bragg, North Carolina, where JAAAT had three separate contracts for three different jobs. Things went sour on the projects: work was allegedly not completed, and subcontractors were allegedly not paid. This led to bond claims against Safeco. Safeco then filed this action to enforce an indemnity agreement. Part of the relief sought by Safeco is a preliminary injunction freezing JAAAT's assets.

JAAAT ultimately signed a consent order agreeing to an injunction. The injunction provided that Safeco would essentially exercise control over all funds JAAAT received from the government on the five bonded projects. In fact, the injunction restrained JAAAT from selling, transferring, encumbering, or disposing of any assets without Safeco's consent.[1] As relevant to this decision, the injunction required JAAAT to forward directly to Safeco, or an escrow

---

[1] The agreed preliminary injunction had a broad scope. In addition to giving Safeco a right to the government payments, it granted Safeco a lien upon all of JAAAT's other assets. The order also required JAAAT to 1) preserve all books, records, and accounts and provide Safeco with full and complete access to these documents, 2) provide Safeco all of the information and documentation it needed to respond to bond claims, 3) furnish Safeco with a full and complete accounting of all JAAAT's assets and property, 4) deposit with Safeco any additional collateral security that Safeco might request, 5) establish trust accounts for the bonded projects and 6) not make withdrawals from the accounts unless certain conditions were met. (Dk. No. 12.)

controlled by Safeco, its receipts on the various contracts, including the contracts for work in North Carolina.

TTT was the main subcontractor on all five jobs, and was apparently responsible for essentially all the work. JAAAT entered into five separate subcontracts with TTT for the projects. As JAAAT's prime subcontractor and project manager for each project, TTT was responsible for management, scheduling, and timely performance of the work. The contracts did not work out as planned, spawning a number of lawsuits, including this case.

On May 14, 2015, JAAAT filed its third-party complaint against TTT. The same day, JAAAT moved for a preliminary injunction against TTT. The preliminary injunction would require TTT to defer to Safeco's instructions on where government payments should go. The third-party complaint led to the unearthing of information that resulted in the undoing of this Court's agreed preliminary injunction.

When they submitted the agreed preliminary injunction, JAAAT and Safeco neglected to tell this Court about the other lawsuits arising from the projects.[2] In three cases in North

---

[2] *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC, et. al.*, In the Court of General Justice, Superior Court Division, State of North Carolina, County of Cumberland, 14-cvs-8787; *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC, et. al.*, In the Court of General Justice, Superior Court Division, State of North Carolina, County of Cumberland, 14-CVS-8791; *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC, et. al.*, In the Court of General Justice, Superior Court Division, State of North Carolina, County of Cumberland, 14-CVS-8792; *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC, Ricky B. Barnhill, and Eddie Cummings*, Richmond County Superior Court of Georgia, 14-cv-712; *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC, Ricky B. Barnhill, and Eddie Cummings*, Chattahoochee County Superior Court of Georgia, 14-cv-131; *JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc.*, Hopewell Circuit Court (dismissed March 17, 2015); *Safeco v. JAAAT Tech. Servs., Inc.*, United States District Court, Eastern District of Virginia, Richmond Division, 3:15-cv-19-JAG; *JAAAT Tech. Serv., LLC v. Tetra Tech Tesoro, Inc.*, United States District Court, Eastern District of Virginia, Richmond Division, 3:15-cv-235-MHL; *United States v. JAAAT Tech. Servs., LLC, Safeco Insurance Company of America and Tetra Tech Tesoro, Inc.*, Eastern District of North Carolina, Western Division, 5:15-cv-227. During the hearing in this matter, the Court noted pending litigation in the Southern District of

Carolina Superior Court, TTT sought relief against JAAAT for contractual and tort claims arising from the Fort Bragg projects. Judge Mary Ann Tally, a North Carolina Superior Court Judge, consolidated the three North Carolina actions for the purpose of deciding TTT's motion for a temporary restraining order and preliminary injunction. On January 5, 2015, Judge Tally granted a preliminary restraining order, which matured into a preliminary injunction on May 6, 2015. The North Carolina Injunction requires JAAAT not to spend any of its money received from the North Carolina projects on anything or any entity except TTT. In contradiction of the North Carolina Injunction, the agreed injunction submitted to this Court directed JAAAT to give all its funds, including those controlled by the North Carolina Injunction, to Safeco. Thus, these injunctions are directly at odds with each other.

Obviously trying to get around the North Carolina Injunction, neither JAAAT nor Safeco told the Court that the North Carolina case even existed, much less had resulted in an injunction governing JAAAT's funds.[3] This is a quintessential material omission.

But that is not JAAAT and Safeco's only material omission. They neglected to tell the Court that JAAAT had already filed a suit in the Circuit Court of Hopewell, Virginia. The Hopewell case sought a declaratory judgment that the North Carolina Court did not have jurisdiction to hear the JAAAT/TTT litigation. Understandably, the Hopewell Court held that it would not issue a judgment telling the North Carolina Court what its jurisdiction is.

Unsuccessful in the Hopewell case, JAAAT tried to evade the effect of the North Carolina Injunction by filing suit against TTT in this Court, *without telling the Court about the other litigation.*

---

Georgia and the Central District of California. It appears these cases involve Tetra Tech, Inc., a distinct entity from the third-party defendant in this case.
[3] At the time they submitted the consent injunction, TTT had not been joined as a party in this case, and thus had no chance to defend its interests arising under the North Carolina Injunction.

4

The chronology of the related cases shows the extent of JAAAT's forum shopping:

- First, on December 8, 2014, TTT moved in North Carolina for an order restraining JAAAT's use of funds paid for the North Carolina projects.

- Then on December 10, 2014, *two days later,* JAAAT filed the Hopewell case asking the Circuit Court to declare that the North Carolina Court lacked jurisdiction over the case pending there.

- On January 5, 2015, Judge Tally in North Carolina enjoined JAAAT from disposing of payments on the North Carolina projects for any purpose other than paying TTT.

- On January 9, 2015, *four days later*, Safeco sued JAAAT in this Court, seeking, *inter alia*, an order directing JAAAT to give the payments on the North Carolina projects, not to TTT, but rather to Safeco.

- March 17, 2015, Judge Lee in Hopewell dismissed the declaratory judgment action.

- Finally, on March 24, 2015, *one week later*, JAAAT and Safeco submitted an agreed order in this Court restraining JAAAT from giving assets to anyone but Safeco.

In short, *every time* JAAAT faced difficulties related to the North Carolina cases, it tried to get Virginia Courts—both state and federal—to undo what the North Carolina decision. In the instant case, it utterly failed to tell the Court about any of the other litigation. Moreover, by submitting an agreed injunction order, JAAAT and Safeco sidestepped the need for a hearing where the other litigation might come to light.

And there is more. JAAAT has filed another suit in this Court dealing with many of the same issues. *See JAAAT Tech. Servs. v. Tetra Tech Tesoro, Inc.*, 3:15cv235-MHL (filed April 17, 2015). Like every plaintiff in this Court, JAAAT submitted a civil cover sheet with its complaint. The cover sheet has a space for the plaintiff to list related litigation. JAAAT's civil cover sheet neglects to disclose 1) the North Carolina litigation, 2) the Hopewell litigation, and 3) the instant case, which is pending in the very court where JAAAT was filing. On its civil cover sheet, it neglected to mention any of the other cases, except an action in a federal court Georgia.

When the Court learned about the procedural shenanigans, it dissolved the agreed preliminary injunction and denied JAAAT's motion for an injunction against TTT.

## II. Analysis

### 1. Comity

The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. The comity doctrine "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Rhines v. Weber*, 544 U.S. 269, 274 (2005) (citation omitted) (internal quotation marks omitted).[4] This is one of those cases.

---

[4] The comity doctrine provides "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1981) (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).

The North Carolina court, finding it had valid jurisdiction over the breach of contract action, ruled in favor of restraining JAAAT's funds. This ruling led to the procedural gymnastics described above, in an attempt to get around the North Carolina Injunction.

At the hearing on JAAAT's motion for a preliminary injunction, the Court asked Safeco and JAAAT to explain why they had not told this Court about the other cases, and, in particular, the North Carolina Injunction. The lawyers offered various excuses for not disclosing the North Carolina Injunction:

- Safeco is not a party to the litigation in North Carolina Superior Court. Tr. 5:6.[5]

- The agreed injunction covers some things not in the North Carolina Injunction. Tr. 27: 2-4.

- JAAAT did not think the North Carolina Injunction had anything to do with the indemnity agreement. Tr. 7:11-13.

- JAAAT did not think about the North Carolina Injunction when it submitted the agreed order here. Tr. 8:1-2.

- JAAAT did not think the North Carolina Injunction was "relevant." Tr. 8:12-13.

- This Court's order does not "hamstring" the North Carolina Court in any way. Tr. 17:17-18.

- Although this Court's order does lead to a "different result" from the North Carolina Injunction, the law allows that result because the Court has personal jurisdiction over the parties. Tr. 19:9-10.

- The North Carolina Injunction is "invalid" and entered in error. Tr. 7;18-19; Tr. 20:17-20.

---

[5] References to the transcript of the May 28, 2015 hearing are denoted by the abbreviation "Tr." followed by the relevant page number and lines.

7

- The North Carolina Court lacked jurisdiction because of a forum selection clause in a contract. Tr. 31:10-12.

These arguments are chock full of contradictions and inconsistencies. Moreover, they ignore the central point: the North Carolina Superior Court entered an order, and the parties submitted an order to this Court overruling an important part of the existing North Carolina Injunction without telling the Court about the existing injunction.

The history of litigation among these parties demonstrates that JAAAT and Safeco are simply trying to forum shop. Safeco and JAAAT disagree with the correctness of the North Carolina Injunction. But the correctness or incorrectness of the actions by the North Carolina Superior Court do not give anyone a license to get relief here without telling the Court about the existing order. There is no good reason not to tell this Court that the agreed order undoes part of the injunction. Comity demands that this Court not award the relief sought in this case.

### 2. *Rooker-Feldman* Doctrine

Further, JAAAT's request that the Court enter a preliminary injunction against TTT requires the Court to interfere with and review the correctness of a state court judgment. Likewise, Safeco's request for the Court to enter an injunction against JAAAT also requires this Court to interfere with a state court injunction. Federal courts have limited subject matter jurisdiction and "possess only the power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

"The *Rooker-Feldman* doctrine generally prohibits lower federal courts from reviewing state court decisions; 'rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court.'" *Friedman's, Inc. v. Dunlap*, 290

F.3d 191, 196 (4th Cir. 2002) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).[6] Here, the plaintiff asks this Court to enter a preliminary injunction against TTT, which would address JAAAT's injury from the North Carolina preliminary injunction. The North Carolina court determined that TTT did not breach the forum selection clause between the parties because, under North Carolina law, the forum selection clause is null and void.

Because considering JAAAT's claims would require the Court to "readjudicate the same issues decided in the state court proceedings," JAAAT's request "is in essence an attempt to obtain direct review of the state court decision . . . in contravention of *Rooker-Feldman*." *Friedman's, Inc.*, 290 F.3d at 196 (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 201 (4th Cir. 2000)). The plaintiff's proper course of action remains within the state court. JAAAT may file a timely appeal of the adverse decisions to a higher state court.

### 3. Equitable Concerns

The decision to award equitable relief always lies in the discretion of the Court. *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989) ("The decision to issue or deny a preliminary injunction is committed to the sound discretion of the trial court."). Even when a party demonstrates all the elements usually required for an award of equitable relief, "the Court may still deny a preliminary injunction in its 'equitable discretion.'" *Signature Flight Support v. Landow Aviation Ltd.*, 698 F. Supp. 2d 602, 624 (E.D. Va. 2010).

---

[6] The doctrine "is premised largely upon 28 U.S.C. § 1257(a), which '[t]he *Rooker-Feldman* doctrine interprets . . . as ordinarily barring direct review in the lower federal courts of a decision reached by the *highest* state court.'" *Id.* (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 622 (1989)). The Fourth Circuit further holds "the doctrine to . . . preclude review of adjudications by lower state courts as well." *Id. Rooker-Feldman* applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006).

In this case, the failure to disclose the existing state court injunction is a factor the Court considered in deciding to vacate its own injunction and to deny JAAAT's motion for an injunction against TTT. The parties' conduct may fall short of a classic case of unclean hands, precluding equitable relief. Typically, the unclean hands doctrine requires that the guilty party have taken some untoward steps "with respect to the right in suit." *Great Eastern Resort Corporation v. Virtual Resort Solutions*, 189 F. Supp. 2d 469, 481 (W.D.Va. 2010). No one suggests that the parties acquired their contractual rights in an underhanded way.

But the unclean hands doctrine does more than simply deny relief to a wrong-doer. It "requires that plaintiffs 'have acted fairly and without fraud or deceit as to the controversy in issue.'" *Zhou Jie Plant, et al. v. Merrifield Town Center Limited Partnership*, 751 F. Supp. 2d 857, 873 (E.D. Va. 2010) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945)), *aff'd*, 482 F. App'x 823 (4th Cir. 2012). The important concern is not just the effect on the other party, but also the effect on the decision-making process of the court itself. In equity, a court cannot grant relief to a party whose conduct sets the judge on the road to making an incorrect decision.

> Furthermore, courts also require that the misconduct in question be of a nature so as to place a fraud on the court itself, not necessarily on either party. "The clean hands doctrine was designed to safeguard the judicial process, not to protect the parties." The actions must be such that they impair the court's ability to effectuate a proper finding in a case, where plaintiff's unethical behavior has worked a fraud on the court and undermined the judicial process.

*In re Hathaway*, 364 B.R. 220, 244 (Bankr. E.D. Va. 2007) (Internal citations and quotation marks omitted).

Here, the omission of information about an existing injunction that covered some of JAAAT's assets "undermined the judicial process." *Id.* In this respect, the Court notes that one of the reasons JAAAT gives for granting its request for preliminary relief is that the North

10

Carolina Injunction and this Court's injunction impose inconsistent obligations on JAAAT—obligations that JAAAT created.

The omission of critical information about the other litigation certainly affected this Court's decision-making process, and provides a separate and additional reason both to deny JAAAT's motion as well as to vacate the previously entered injunction.

### III. Conclusion

For the reasons stated from the bench on May 28, 2015, and for the reasons discussed above, this Court VACATES the previous preliminary injunction order and DENIES JAAAT's motion for preliminary injunction.

IT IS SO ORDERED.

Let the Clerk send a copy of this opinion to all counsel of record. The Clerk is also directed to send a copy of this decision to the Honorable Mary Ann Tally, Judge, Superior Court of Cumberland County, North Carolina.

Date: June 23, 2015
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge